*RUSSELL, for the use of CRUCET, v. UNION INSURANCE Co. (ι)

*Insurable interest.—Abandonment.—Record of court of admiralty.*

A surety for the payment of the value of a cargo, in case of condemnation by a foreign court, to whom it has been delivered for indemnity, has an insurable interest therein.

If the cargo, after effecting an insurance thereon, be taken out of the possession of such surety, by a decree of restitution, he may abandon for a total loss.

The record of a foreign court of admiralty is evidence to prove a condemnation; but between assurer and assured, it is only evidence of the cause of condemnation.

If the record of a foreign court of admiralty, containing copies of papers, the originals of which are not produced, be read in evidence, without objection, it is too late to object, after the argument has commenced.

COVENANT, on an open policy for $10,000, at a premium of ten per cent., upon goods on board the ship Hibberts, on a voyage at and from the Havana to New York.

The case was this : The ship Hibberts and her cargo, the property of British subjects, were captured by a French privateer, and carried to the Havana. They were there claimed by Mr. C. Frazier (an English merchant), on the recommendation of Captain Vansittart, commanding a British frigate, for the British owners, and an order for restitution was granted by the Spanish government, on security being given for the appraised value (to wit, the ship $9655, and the cargo $22,400), to abide the issue of an appeal, made by the captor, from the order of restitution. The master had been removed, at sea, at the time of the capture, and sent to the United States ; but the first and second mates, who went in the ship to the Havana, offered the security ; which was given at their instance, by Mr. Felix Crucet (a Spaniard, constituted their attorney), and the ship and cargo were thereupon delivered to to him, on account of the original owners; but accompanied by a written declaration from Mr. Frazier, " that ship and cargo were subject to Crucet's orders, until he shall be finally indemnified for his disbursements for costs of suit, outfits, commissions, &c., and be released from his security." Crucet having determined to send the ship and cargo to the United States, wrote two letters, dated, respectively, the 7th and 23d of July 1804, to his correspondent, Henry Hill, at New York, in which, after representing the facts above stated, and ordering insurance, he proceeds in these words :

" In my letter of the 7th inst. ordering insurance on the ship Hibberts and cargo, I stated fully the footing on which she was delivered to me by the governor and auditor of war, on security and mortgage ; and she now proceeds to your address, with all the papers then mentioned on board, besides the invoice and bill of lading of the cargo. From what are herewith inclosed, you will observe, that the mortgage and security have been given for $22,410, value of the cargo, and $9655, value of the ship Hibberts, to hold that amount of stock, being $32,065, subject to the order of the court here, until the appeal entered to the supreme council of war in Madrid, shall be decided. You will also observe, that my account of advances for lawcosts, repairs, sails, rigging, provisions, advance wages, &c., for the ship, in this port, amounts to $6444.01¾; my commission of guarantee, on giving the security and mortgage, five per cent. on $32,065, is $1653.01, and my com-

(a) s. c. 1 W. C. C. 409.

Russell v. Union Insurance Co.

mission for agency and trouble, two and a half per cent., $826.0 ½, makes total $8923.07¾, *and that the last-mentioned sum of $8,923.07¾, must be [*422 paid to me here, and I must be entirely freed and released in this city for the security and mortgage I have given for the ship and cargo, before giving up any part of the proceeds thereof. I have wrote to the concerned in England, apprising them of these circumstances, and that I shall give them due advice, from time to time, of the progress of the appeal. You will, I hope, exert yourself to dispose of the ship and cargo to the best advantage, for the benefit of the concerned, sending the account sales to me here, as soon as convenient, in order to be transmitted to them in England."

The letter of instructions from Crucet to the master of the Hibberts, directed him "to proceed direct to New York, and there deliver the letters, and other papers, to Mr. Henry Hill, Jun., and in his absence, to Mr. Samuel Russell, merchant there, to whom the cargo is consigned. These gentlemen will also take charge of the ship in New York, and will furnish you with money to pay off the officers and crew; and will pay you any balance that may be due to yourself." And the invoice was headed, "Invoice of the cargo on board the ship Hibberts, of London, John Haines, master, bound for New York, and consigned to Mr. Henry Hill, Jun., merchant there, by Felix Crucet, on account and risk of the owners, underwriters or others, in England, or those who may be concerned in said ship and cargo."

On the 13th of August 1804, I. S. Waln, for Samuel Russell (the consignee appointed by Crucet, in case of Hill's absence), effected the insurance which is the ground of the present action. The ship sailed on the voyage insured; but was captured by the Leander, off Sandy Hook, on the 16th of August 1804, and sent to Halifax, where she arrived on 31st of August. The vessel and cargo were there libelled in the court of vice-admiralty as prize, and claimed by the master, for Crucet: but by the decree of the court, pronounced on the 10th of October, the claim was rejected, and the judge "pronounced the ship and cargo to be the property of British subjects, recaptured by his Majesty's ship of war Leander, and decreed the said ship and her cargo to be restored to the original British owners, on payment to the recaptors of one-eighth part of the value thereof, and the claimant to pay costs." (a) From this decree, the claimant appealed; but the vessel and cargo were delivered, on security, to the agent of the original British owners, and sent by him to England.

When the ship was captured, it was notified to the defendants, who agreed to pay a just proportion of the expense of recovering *the [*423 property; but no actual abandonment, or offer to abandon was made, until the 2d of November, when the decree of the vice-admiralty had been received by the plaintiff.

On the trial of the cause, the plaintiff's counsel read to the jury, the policy, the orders of Crucet and his agents for insurance (which had been communicated to the defendants, at the time of effecting the insurance) and the whole of the record of the proceedings in the court of vice-admiralty;

---

(a) In speaking of the decree of restitution, taking the property from the hands of a Spaniard, who had so fairly obtained a lien upon it, the court was reminded, that although war was declared between Great Britain and France, on the 16th of May 1803, Spain did not become a party to it until the 11th January 1805.

but neither the original hypothecation to Crucet, nor the original bill of lading, nor the original invoice, nor any other proof of the special property of the plaintiff in the ship and cargo was produced : and as soon as the plaintiff's counsel began to argue upon the papers found on board the ship, and spread upon the record (to wit, the hypothecation, bill of lading and invoice) as proof of property, the opposite counsel objected, that although the whole record must be read, it was only evidence of the sentence of restitution.

The general *defence* was then placed on these grounds : 1st. That the abandonment was not made in due season ; which, however, was an objection mentioned, but not strenuously urged. (Park 82, 81, 172 ; 1 T. R. 608.) 2d. That the insurance was effected upon ship and goods, on account and risk of the original British owners, not on the special interest of Crucet-for his use and indemnity. (Park 267–8; 1 T. R. 309.) 3d. That the decree is conclusive to prove that the property was not in Crucet ; and the restitution to the original owners was restitution to him as their agent. 4th. That the statements of Crucet and his agents to the underwriters, are not evidence of the facts contained in them upon the present trial ; nor are the papers set forth in the record of the court of vice-admiralty, legal or conceded proofs of property.

For the *plaintiff*, it was contended : 1st. That his interest was of an insurable nature. 2d. That the nature of his interest was communicated to the defendants, at the time of effecting the insurance. 3d. That the loss of his possession, on the capture and restitution, was the loss of his lien, and in its effect total. 4th. That the record being read, without previous objection or restriction, every part of it became evidence in itself ; and the property of the plaintiff was proved by it. 5th. That, however, the question of property was a question of fact ; and the papers on the record must, at least, be re garded as corroborating the statements of the plaintiff and his agents, to prove his interest in the subject insured.

The charge of the court was delivered by the presiding judge, in sub-stance as follows :

WASHINGTON, Justice.—Though the case involves points of some novelty, and of considerable difficulty, we have so far satisfied our minds, that we will not request the jury to reserve anything *for future consideration, [*424] although either party is at liberty to move for a new trial.

The first and principal difficulty is, whether Crucet has proved his interest in the subject insured, by proper evidence. The record of a court of admiralty is always evidence to prove a condemnation ; but, certainly, in cases between the insurer and insured, it is only evidence, according to the general rule, to prove the cause of condemnation. On the present occasion, however, the record was read to the jury, without opposition ; and, on this ground alone, we decide it to be an exception to the rule. For if the objection had been made, the plaintiff would have enjoyed an opportunity to supply the proof by other means.

The record is, therefore, considered as proof of facts, so far as it exhibits documents, which, if now produced, would be evidence in the cause. This still excludes, on the one hand, letters written by Crucet ; while on the other hand, it admits those papers, authenticated by other sources, that show the

Russell v. Union Insurance Co.

extent of his advances, the nature of his engagements, and the lien which he acquired upon the ship and cargo.

Upon the evidence, thus admitted, Crucet appears clearly to have acquired a contingent interest in the property ; but it was, at first, a question of great doubt with us, whether it was an insurable interest. (a) As to his actual advances of money, there could be no doubt, provided there was (as there is not) satisfactory evidence on that point, independent of what proceeds from himself. But to the right of insurance, the obligation of abandonment, in case of loss, would seem to be an inseparable incident ; and we doubted, whether Crucet had anything in the property, which he could abandon upon a loss, and of course, which he was entitled to insure. On reflection, however, we conclude, that upon an abandonment, the underwriters acquire all Crucet's rights and remedies against the British owners : and as to the manner of insuring his interest, it is clear, that a person having a lien upon a cargo, may cover it by an insurance on goods.

It is true, that the assured should communicate to the underwriter the nature of his interest in the subject insured, though it need not be specified in the policy ; and on this ground, a question of fact arises, for the consideration of the jury. If the insurance of the special interest, and not of the principal ownership, made a material difference in the risk, or would have altered the amount of the premium ; and the fact was not sufficiently disclosed to the defendants, the omission would vacate the policy.

After this view of the case, it only remains to inquire, whether a loss has happened, which entitles the plaintiff to recover? He has lost his possession : and although we will not decide, whether the capture and sentence have *destroyed his lien ; we think, that as they have rendered it necessary to pursue the property, through an expensive, troublesome [*425 and doubtful medium, he has a right to consider the occurrence as a total loss, and to recover the amount of the insurance.

Verdict for the plaintiff. (b)

*Ingersoll* and *Rawle*, for the plaintiff. *E. Tilghman* and *Dallas*, for the defendants.

---

(a) As to what is an insurable interest, see Sansom *v.* Bell, *post*, p. 439 ; Warder *v.* Horton, 4 Binn. 529 ; Wells *v.* Philadelphia Ins. Co., 9 S. & R. 103 ; Columbian Ins. Co. *v.* Lawrence, 2 Peters 25.[1]

(b) A motion was afterwards made for a new trial, on the single ground, that there was no proof of property in the plaintiff, except the ship's papers, spread upon the record of the court of vice-admiralty. An affidavit was filed, stating that Mr. *Ingersoll* had applied to Mr. *Dallas*, before the jury were sworn, to admit the record as proof of property, which was refused ; and that the application of the record to that purpose (after it had been read), was opposed, as soon as it was attempted. But the motion was rejected, as Judge WASHINGTON adhered to the opinion delivered in the charge, and Judge PETERS said, that he had decided as well on that ground, as on the corroborative evidence, arising from the sameness of the documents found in the ship, and those described in the communications to the defendants, when the insurance was effected.[2]

[1] Also, Seamans *v.* Loring, 1 Mason 127 ; Aldrich *v.* Equitable Safety Ins. Co., 1 W. & M. 272 ; Bank of South Carolina *v.* Bicknell, 1 Cliff. 85 ; Insurance Co. *v.* Baring, 20 Wall. 159. [2] For a report of the case on the motion for a new trial, see 1 W. C. C. 440.